# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TRACY DORIOT, DORIOT CONSTRUCTION LLC, and OAK HARBOR FREIGHT, INC., | No. 59349-1-II |
| Appellants, | |
| v. | ORDER GRANTING MOTION TO PUBLISH AND PUBLISHING OPINION |
| STATE OF WASHINGTON, JAY INSLEE, in his official capacity as Washington State Governor, WASHINGTON STATE LEGISLATURE, | |
| Respondents, | |
| and | |
| THE WASHINGTON STATE TRANSIT ASSOCIATION and KING COUNTY, | |
| Intervenor-Respondents. | |

Appellants, Tracy Doriot, Doriot Construction LLC, and Oak Harbor Freight, Inc., filed a motion to publish the opinion filed in the above matter on September 24, 2024, and amended on December 10, 2024. Respondents filed a response on December 12, 2024. After consideration, the court grants the motion. It is now

**ORDERED** that the final paragraph in the opinion which reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but

No. 59349-1-II

will be filed for public record in accordance with RCW 2.06.040, it is so ordered." is deleted.  It

is further

ORDERED that the opinion will now be published.

PANEL: Jj. Lee, Veljacic, Che

FOR THE COURT:

_____
PRESIDING JUDGE

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| TRACY DORIOT, DORIOT CONSTRUCTION LLC, and OAK HARBOR FREIGHT, INC., | No. 59349-1-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, JAY INSLEE, in his official capacity as Washington State Governor, WASHINGTON STATE LEGISLATURE, | |
| Respondents, | |
| and | |
| THE WASHINGTON STATE TRANSIT ASSOCIATION and KING COUNTY, | |
| Intervenor-Respondents. | |

CHE, J. — Individual and corporate Washington taxpayers, Tracy Doriot, Doriot Construction LLC, and Oak Harbor Freight, Inc. (collectively Doriot), appeal the trial court's summary judgment dismissal of their lawsuit against the State of Washington, Jay Inslee, and the Washington State Legislature (collectively the State).[1] Doriot filed suit against the State challenging the validity of Engrossed Substitute Senate Bill 5974 (ESSB 5974) under article II, section 19 of the Washington State Constitution. Doriot claimed the law violates the

---

[1] Washington State Transit Association and King County also appear as Intervenor-Respondents.

constitution's single subject and subject-in-title rules and is therefore void. Doriot moved for summary judgment and declaratory relief. The State opposed Doriot's motion and argued that the trial court should grant summary judgment in its favor. The trial court denied Doriot's motion for summary judgment and concluded that, as a matter of law, the State was entitled to summary judgment dismissal of Doriot's claims.

Doriot appeals, arguing that the superior court erred by denying their motion for summary judgment and dismissing their claims. We disagree and affirm.

FACTS

The parties do not dispute the underlying facts of the case.

I. WASHINGTON STATE'S TRANSPORTATION SYSTEM

Producing, managing, and utilizing transportation resources throughout the State of Washington is undeniably a complex responsibility. Washington's transportation system includes a variety of modes of movement including motor vehicles, planes, boats, trains, bicycles, and pedestrian movement. The operation of transportation systems is "spread among federal, state, and local government agencies, regional transit agencies, port districts, and the private sector." RCW 47.06.010. The legislature has recognized that transportation planning "must be a comprehensive and coordinated effort," and that, therefore, "the state has an appropriate role in developing statewide transportation plans that address state jurisdiction facilities and services as well as transportation facilities and services of state interest. These plans shall serve as a guide for short-term investment needs and provide a long-range vision for transportation system development." RCW 47.06.010. To this end, the legislature created a statewide multimodal transportation development plan to support the following policy goals:

4

No. 59349-1-II

preservation, safety, stewardship, mobility, economic vitality, and environment. RCW

47.01.011; RCW 47.06.040; RCW 47.04.280.

## II. ESSB 5974

ESSB 5974 is a 121-page piece of legislation that passed the Washington Legislature in

2022. ESSB 5974's full title and description reads:

> AN ACT Relating to transportation resources; amending RCW 70A.65.240, 70A.65.030, 70A.65.040, 82.42.020, 46.17.200, 46.17.120, 46.17.400, 46.52.130, 46.17.015, 46.17.025, 46.20.200, 46.68.041, 46.70.180, 82.32.385, 82.08.993, 82.12.817, 82.08.9999, 82.12.9999, 82.04.4496, 82.16.0496, 82.08.816, 82.12.816, 82.70.040, 82.70.050, 82.21.030, 43.84.092, 43.84.092, 82.47.020, 36.73.065, 82.14.0455, 70A.535.010, 70A.535.030, 70A.535.040, 70A.535.050, 70A.535 .120, 46.63.170, 46.63.170, 70A.65.230, 46.68.480, 46.68.060, 46.68.396, 47.01. 480, 81.104.160, and 47.66.120; amending 2020 c 224 s 3 (uncodified); reenacting and amending RCW 46.20.202 and 43.155.050; adding new sections to chapter 46.68 RCW; adding a new section to chapter 70A.535 RCW; adding new sections to chapter 47.66 RCW; adding new sections to chapter 47.04 RCW; adding a new section to chapter 47.24 RCW; adding new sections to chapter 47.60 RCW; adding a new section to chapter 47.56 RCW; adding a new section to chapter 47.06A RCW; adding a new chapter to Title 43 RCW; creating new sections; repealing RCW 70A.535.020; prescribing penalties; providing effective dates; providing expiration dates; and declaring an emergency.

Clerk's Papers (CP) at 12.

ESSB 5974 includes five subsections addressing a variety of topics pertaining to the

general topic of transportation resources in Washington State. The bill provides direction and

requirements on the spending for a portion of the funding generated under the Washington

climate commitment act, and removes the requirement to consider and enact legislation dealing

with compliance obligations for emissions-intensive and trade-exposed industries under the

Washington climate commitment act. ESSB 5974 further repeals the current motor vehicle fuel

tax exemption for exported fuel and replaces it with a credit system in which a $0.06 per gallon

tax would apply to some portion of exported fuel. The bill increases a variety of transportation

taxes and fees and provides additional local government taxing authority. Additionally, ESSB 5974 removes current statutory language requiring the passage of an additive transportation package before the Clean Fuel Standard program compliance and credit provisions go into effect. Finally, ESSB 5974 makes various other changes associated with financing and spending assumptions, and with certain transportation policies, as provided in the Move Ahead Washington transportation package.[2]

Prior to final passage of ESSB 5974, one senator raised a concern that the bill violated Senate Rule 25, which requires a bill embrace no more than one subject. After hearing statements for and against the issue, the president of the senate ruled that the point was "not well taken," ESSB 5974 proceeded to roll call on final passage, and the constitutional majority of votes were cast in favor of passage. CP at 840.

### III. PROCEDURAL HISTORY

Doriot requested that the attorney general investigate the constitutionality of ESSB 5974 and initiate legal proceedings on behalf of Washington taxpayers. The attorney general declined.

Doriot then filed a complaint for declaratory judgment against the State, Jay Inslee in his official capacity as governor, and the Washington State Legislature. Washington State Transit Association (WSTA) and King County Metro moved to intervene as defendants in the litigation, and the trial court granted the motion.

---

[2] The Move Ahead Washington transportation package is Washington's 16-year, $17 billion plan for supporting and investing in the State's transportation system. It includes plans for funding public transportation, bicycle and pedestrian safety, road preservation and maintenance, and climate mitigation.

Doriot moved for summary judgment and declaratory relief, arguing that ESSB 5974 is unconstitutional as a matter of law. The State, King County Metro, and WSTA filed responses to Doriot's motion, agreeing that no questions of fact were at issue but that, as a matter of law, Doriot's claims should be dismissed and summary judgment should be granted for them. The State also argued that the legislature should be dismissed as a party. The trial court denied Doriot's motion for summary judgment and granted the defendants' summary judgment dismissal as to all claims.

Doriot appeals.

## ANALYSIS

Doriot argues that the trial court erred by denying Doriot's motion for summary judgment and granting summary judgment in favor of the State because ESSB 5974 violates art. II, § 19 of the Washington Constitution. We disagree.

### I. LEGAL PRINCIPLES

We review orders on summary judgment de novo. *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231, 393 P.3d 776 (2017). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When the facts are not in dispute, the court may order summary judgment in favor of the nonmoving party. *See Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 365, 841 P.2d 752 (1992).

We also review the constitutionality of legislation de novo. *Wash. State Grange v. Locke*, 153 Wn.2d 475, 486, 105 P.3d 9 (2005). A party arguing that an act violates the state constitution "bears the heavy burden of establishing its unconstitutionality beyond a reasonable

doubt;" any reasonable doubts are resolved in favor of constitutionality. *Id*. (internal quotation marks omitted) (quoting *Pierce County v. State*, 150 Wn.2d 422, 430, 78 P.3d 640 (2003)). This high standard is based in our respect for the legislative branch of government, which, like the court, is sworn to uphold the constitution. *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998). "We assume the Legislature considered the constitutionality of its enactments and afford some deference to that judgment." *Id*.

The Washington State Constitution article II, section 19 states that "No bill shall embrace more than one subject, and that shall be expressed in the title." Two specific rules are embodied in article II, section 19: (1) the single subject rule and (2) the subject-in-title rule. *State v. Alexander*, 184 Wn. App. 892, 896, 340 P.3d 247 (2014).

## II. SINGLE SUBJECT RULE

Doriot argues that the ESSB 5974 is unconstitutional because it violates article II, section 19's first requirement that no bill shall embrace more than one subject. We disagree.

Article II, section 19 serves the purpose of preventing "the practice of combining two bills, neither of which would pass on its own, but when the proponents of the measures combine their interests both can be enacted," and preventing "the attachment of an unpopular bill to a popular one on an unrelated subject in order to guarantee the passage of the unpopular provision." *Wash. State Grange*, 153 Wn.2d at 491. "If the bill has a general title, it 'may constitutionally include all matters that are reasonably connected with it and all measures that may facilitate the accomplishment of the purpose stated.'" *Alexander*, 184 Wn. App. at 897 (quoting *Pierce County v. State*, 144 Wn. App. 783, 819, 185 P.3d 594 (2008)). On the other hand, "a restrictive title expressly limits the scope of the act to that expressed in the title" and

"provisions not fairly within it will not be given force." *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 210, 11 P.3d 762, 27 P.3d 608 (2000).

The parties here agree that ESSB 5974 has a general title. Because ESSB 5974's title is general, "great liberality will be indulged to hold that any subject reasonably germane to such title may be embraced within the body of the bill." *Id*. at 207. "There is no violation of art. II, § 19 even if a general subject contains several incidental subjects or subdivisions." *Id*.

Our primary inquiry, therefore, is whether a rational unity exists among the subjects addressed in the bill. *Alexander*, 184 Wn. App. at 898. On the topic of rational unity, our Supreme Court has explained that the requisite unity "[may be] found in the general purpose of the act and the practical problems of efficient administration." *State ex rel Wash. Toll Bridge Auth. v. Yelle*, 61 Wn.2d 28, 33, 377 P.2d 466 (1962). The Supreme Court explained,

> [M]atters which ordinarily would not be thought to have any common features or characteristics might, for purposes of legislative treatment, be grouped together and treated as one subject. For purposes of legislation, 'subjects' are not absolute existences to be discovered by some sort of a priori reasoning, but are the result of classification for convenience of treatment and for greater effectiveness in attaining the general purpose of the particular legislative act.

*Id*.

A rational unity analysis involves two steps. *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 636-37, 71 P.3d 644 (2003). First, we determine whether there is rational unity between the general subject and the incidental subdivisions within the legislation. *Id*. at 636. Here, Doriot identifies 14 incidental subjects with which ESSB 5974 deals, including: (1) appropriations to reduce stormwater runoff from road and existing infrastructure, (2) creation of specific climate-related transportation accounts including the Move Ahead Washington account created within the motor vehicle fund, (3) increases to aircraft fuel excise taxes,

(4) increases to stolen vehicle check, dealer temporary permits, drivers' license, license plate, and other vehicle fees, (5) amendments to certain special transportation districts' authority to impose motor vehicle and sales taxes, (6) repeal and grant of authority to the Department of Ecology to adopt carbon intensity standards via rulemaking for certain transportation fuels used in Washington, (7) a target that all sales, purchases, or registrations of passenger and light duty vehicles of model year 2030 or later be electric vehicles, (8) creation of specific statewide transportation programs, (9) a requirement that Washington state ferries allow all riders 18 years and younger to ride free of charge, (10) creation of state grants to be issued to public transit agencies creating zero-fare policies for persons 18 years and younger, (11) revisions to local pilot programs allowing the use of automated traffic safety cameras, (12) creation of safety improvement projects for highway systems, and (14) creation of other miscellaneous programs.

Doriot does not identify how these incidental subjects lack rational unity with the general topic of transportation resources. We hold that each of these subjects bears a rational relationship to the general subject of transportation resources. Given the complex, multifaceted nature of transportation in Washington, it is reasonable that a comprehensive bill addressing transportation resources, generally, would address the multiple subjects contained within ESSB 5974.

The second step in the rational unity analysis is to determine if the incidental subjects bear some rational relation to one another. *Id*. at 637. Doriot contends that ESSB 5974's various provisions embrace multiple subjects that are neither related to nor necessary to implement each other. But the rational unity test "does not necessitate a conclusion that [the incidental subjects]

are *necessary to implement each other*, although that may be one way to do so." *Id*. at 638. The rational unity test demands only that the subjects be germane to one another. *Id*.

As a specific example, Doriot argues that "addressing safety issues related to automated traffic safety cameras and deaths on two-lane rural roadways [] are not rationally related or germane to the various tax and fee increases imposed by the Act to support climate transportation initiatives." Br. of Appellant at 24. King County Metro responds to this specific argument by arguing that the sections directed at utilizing transportation resources to reduce highway deaths are rationally related to the sections regulating fossil fuels—a natural transportation resource—because they are designed to mitigate adverse health and safety impacts of transportation within the community. Utilizing transportation resources throughout the state to promote community safety—whether from dangerous road conditions or environmental health impacts of carbon emissions—is a reasonable consideration for the legislature when crafting legislation related to transportation resources. While these two incidental subjects of ESSB 5974 may not appear inherently related to one another at first blush, both topics are rationally related to the utilization of transportation resources throughout our state and are therefore germane to one another.

Doriot relies on a handful of cases in which our Supreme Court found legislation violated the single subject rule, arguing that ESSB 5974's provisions go far beyond the constitutional violations in those cases. In *Wash. Toll Bridge Authority v. State*, the court addressed a bill involving toll roads. 49 Wn.2d 520, 304 P.2d 676. The court noted that the legislation had two distinct purposes—(1) to provide permanent legislation empowering a state agency to establish and operate all toll roads and (2) to provide for the construction of one specific toll road linking

Tacoma, Seattle, and Everett. *Id*. at 523. The court held that the two purposes were not germane to each other. *Id*. at 524. The court found it particularly problematic that the creation of the state agency was long-term and continuing in nature whereas the funding provision was a onetime event that was narrow in scope. *Id*.

Similarly, in *City of Burien v. Kiga*, the Supreme Court held that a voter initiative violated the single subject rule where its two purposes were not germane to one another. 144 Wn.2d 819, 827, 31 P.3d 659 (2001). First, the initiative sought to nullify various different tax increases and provide a onetime refund of those taxes, and second, it sought to change the method of assessing property taxes, culminating in a two percent cap for property tax increases. *Id*. The Supreme Court held that the one time retroactive refund of a variety of charges was unrelated to the systematic, ongoing changes in property tax assessments. *Id*.

In *Lee v. State*, the Supreme Court held that another voter initiative violated the single subject rule. 185 Wn.2d 608, 623-24, 374 P.3d 157 (2016). There, the initiative sought to reduce the current sales tax rate and also make a permanent change to the Washington State Constitution or to the method for approving all future taxes and fees set forth in the initiative. *Id*. The court held that the subjects were "unrelated" to each other, in particular noting that one subject would void implementation of the other. *Id*.

These cases are distinguishable from this case in that those bills were inherently narrower in scope. Nor does ESSB 5974 present the scenario of an obvious "you-scratch-my-back-and-I'll-scratch-yours" logrolling attempt as presented in *Power, Inc. v. Huntley*, 39 Wn.2d 191, 199, 235 P.2d 173 (1951) (holding that a bill violated the single subject rule where two unrelated provisions were clearly combined in one bill to ensure its passage).

ESSB 5974 is more similar to *In re Boot*, 130 Wn.2d 553, 925 P.2d 964 (1996). There, our Supreme Court rejected a single subject rule challenge to a broad omnibus bill addressing violence prevention. *Id*. at 565. The court acknowledged that the bill contained multiple provisions, but focused on the fact that "[t]he Legislature found it necessary to combine diverse provisions into a single omnibus act to address a single problem in a comprehensive way." *Id*. at 568. "'[I]f the legislation is an omnibus bill designed by the Legislature or the people to address a larger subject area, the wishes of the Legislature or the people in addressing an issue comprehensively in a single bill may be respected.'" *Id*. (quoting *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 901 P.2d 1028 (1995) (Talmadge, J., concurring in part/ dissenting in part).

Similarly to *Boot*, ESSB 5974 reflects the legislature's effort to address a single problem, transportation resources, in a comprehensive manner. As already acknowledged, the production, maintenance, and utilization of transportation resources across our state is inherently a complex, multifaceted issue. It rationally follows that legislation addressing that issue would combine diverse provisions. Each of the provisions in ESSB 5974 furthers the legislative purpose of addressing the complex production, maintenance, and utilization of transportation resources in Washington to achieve both short-term investment needs and provide a long-range vision for transportation system development. *See* RCW 47.06.010. ESSB 5974 therefore meets the rational unity test of article II, section 19 of our constitution as a legitimate expression of legislative purpose.

Doriot emphasizes the alleged differences in the Respondents' descriptions of ESSB 5974's purpose and scope. But Doriot's characterization of the Respondents' arguments is

inaccurate. All of the respondents in this case, both in their response briefs on appeal and in their responses to the summary judgment motion in the trial court, generally describe the bill as a multifaceted piece of legislation providing a comprehensive approach to the production, maintenance, and utilization of Washington's various transportation resources. Nuances in the specific language each respondent uses in their briefing is insufficient to show that ESSB 5974 is unconstitutional beyond a reasonable doubt, as Doriot must.

ESSB 5974 embraces the general subject of transportation resources. Given the complex, multifaceted nature of transportation in Washington, it reasonably follows that a comprehensive bill addressing those resources would contain multiple incidental subjects. We hold that the subjects contained within ESSB 5974 are germane to both the general subject and to each other. Accordingly, ESSB 5974 does not violate article II, section 19's requirement that a bill not embrace more than one subject.

### III. SUBJECT-IN-TITLE RULE

Doriot also argues that ESSB 5974 violates article II, section 19's second requirement that the subject of the bill must be adequately expressed in its title, known as the subject-in-title rule. *Wash. State Grange*, 153 Wn.2d at 497. We disagree.

The purpose of the subject-in-title requirement is to guarantee notice of the subject matter of the bill. *Id*. at 491. "To be constitutionally adequate, a title need not be 'an index to the contents [of the bill], nor must it provide details of the measure.'" *Id*. at 497 (quoting *Amalg. Transit Union*, 142 Wn.2d at 217. The title of the bill need only provide sufficient notice to inform voters and legislators of the subject matter of the bill. *Id*. "The title satisfies the subject in title requirement 'if it gives notice that would lead to an inquiry into the body of the act, or

indicate to an inquiring mind the scope and purpose of the law.'" *Id.* (quoting *Young Men's Christian Ass'n v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963)). "Any objections to a title must be grave, and the conflict between it and the constitution palpable, before we will hold an act unconstitutional for violating the subject-in-title requirement." *Pierce County,*, 144 Wn. App. at 822.

Doriot fails to meet this high bar. Here, ESSB 5974's title is "AN ACT Relating to transportation resources" and identifies the various RCWs it impacts. CP at 12. The subject at issue—transportation resources—is clearly expressed in the title of ESSB 5974. The bill, while multifaceted, has an overarching theme related to the production, maintenance, and utilization of transportation resources.

Doriot argues that ESSB 5974's title fails to indicate the scope and purpose of the law and does not give notice to the parties whose rights and liabilities are affected; specifically, it does not include the impact on certain taxes and fees to individuals and business. Doriot focuses on the dictionary definitions of "transportation" and "resources," but their reliance does not aid their argument. They emphasize that the dictionary definitions of "transportation" and "resources" do not include subjects such as "revenue," "climate change," "transit authority," "infrastructure," "sustainability," "license fees," or "tax credits." Br. of Appellant at 34. But the title need not be an index to the contents of the bill. *Citizens for Responsible Wildlife Mgmt.*, 149 Wn.2d at 653-54. The title must indicate that the body of the bill pertains to the various transportation resources at issue in Washington State. ESSB 5974's title conveys exactly that. A reasonable person would anticipate that a bill generally addressing transportation resources, as the title indicates, would include provisions pertaining to taxes and fees.

Doriot also contends that the title "transportation resources" is constitutionally inadequate because it could refer to financial sources for Washington transportation projects or to natural sources of fuels as used for transportation, or some other subject entirely. The intentionally general title notifies an interested reader that the contents of the bill addresses transportation resources, which a reasonable person could conclude would cover a myriad of subtopics— including financial resources for transportation issues and natural transportation resources— given the complex nature of transportation in Washington. As the State points out, the title of the bill purposefully used a broad, plural, inclusive term—resources—suggesting to an inquiring mind that the subject relates to multiple types of resources.

Additionally, the cases Doriot relies on to support their argument are easily distinguishable. In *Swedish Hosp. of Seattle v. Dep't of Labor and Indus.*, 26 Wn.2d 819, 822, 176 P.2d 429 (1947), the Washington Supreme Court examined a bill entitled "An Act giving workmen's compensation benefits to persons engaged in hazardous and extrahazardous occupations in charitable institutions." The court held that the bill violated the subject-in-title rule because the legislation affected non-profit institutions other than charitable institutions as indicated in the title. *Id*. at 833.

In *Patrice v. Murphy*, 136 Wn.2d 845, 853, 966 P.2d 1271 (1998), the title of a bill was "AN ACT Relating to court costs," but the body of the bill also included provisions relating to ASL interpreters, legal proceedings, police investigations, and arrests. The bill also established a private cause of action for damages if the statute's requirements were not complied with. *Id*. The Supreme Court held that the title of the bill unconstitutionally failed to signal to a reader the

hidden effects of the amendment's enactment and specifically failed to provide notice to the law enforcement community that the scope of their liabilities and duties were expanding. *Id*. at 855.

In contrast to the title of the bills at issue in *Swedish* and *Patrice*, nothing in ESSB 5974's general title suggests that the provisions of the bill are limited to any particular group or narrow issue. The title specifically uses the term "resources," indicating to a reasonable reader that the bill addresses multiple types of resources. Because the title gives notice of the general subjects contained within the legislation, Doriot's claim that ESSB 5974 violates the subject-in-title rule fails.

## CONCLUSION

Accordingly, we hold that ESSB 5974, as a matter of law, does not violate the Washington State Constitution's single subject or subject-in-title rules contained in article II, section 19. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Veljacic, A.C.J.